**UNITED STATES v. FELDMAN.**

**Civ. A. No. 213.**

United States District Court.
D. Nebraska, Norfolk Division.
Oct. 6, 1950.

James L. Brown, Asst. U. S. Atty., Lincoln, Neb., for the plaintiff.

James F. Brogan, Brogan & Brogan, Madison, Neb., for the defendant.

## DELEHANT, District Judge.

Properly resting jurisdiction upon 28 U. S.C.A. § 1345, the plaintiff prays for judgment against the defendant in the sum of $104 with interest at the rate of six percent per annum from July 31, 1947 and costs of suit. Its claim is for the unpaid premium for the year 1947 upon a contract of wheat crop insurance, issued by Federal Crop Insurance Corporation (hereinafter referred to as the corporation) upon the defendant's application, covering the defendant's wheat crop for the years 1946, 1947 and 1948.

By answer, the defendant originally denied the actual execution of the contract, and specifically the signature and acceptance in behalf of the corporation of his application. But that position was later abandoned in the defendant's answers to interrogatories. Besides, the due signature and acceptance of the application were clearly shown. In the course of the pretrial conference it was further agreed that if the plaintiff is entitled to recover anything from the defendant, the amount so to be recovered is that designated in the prayer of the complaint. In its final position, as affected by the defendant's answers to interrogatories and the report of pretrial con-ference the answer tenders two factual contentions and one legal proposition. The factual claims are (a) that the contract of insurance was procured by misrepresentation on the part of one Aloys S. Albracht, an agent of the corporation to the effect that, under it, the defendant's wheat yield would be guaranteed to the extent of nineteen bushels per acre, whereas a yield of only thirteen bushels per acre was actually insured, and (b) that the defendant on learning of the limited extent of such insurance validly and effectively cancelled the alleged contract for the year 1947 and thereafter. By way of a legal contention the answer asserts that the applicable rules promulgated under authority of The Federal Crop Insurance Act, vide infra, on which the plaintiff principally relies were and are invalid.

From the pleadings, together with the answers to interrogatories and report of pretrial conference and the evidence on the trial, the following facts are found to exist. Except narrowly they are without dispute. In August 1945, Albracht, himself a farmer in Madison County, Nebraska, was employed on a part time basis by Madison County Agricultural Committee as a solicitor or salesman of Federal Crop Insurance Corporation wheat crop insurance. In that capacity, on August 23, 1945, he approached the defendant (in the same interview with which he also approached one Henry Kossmann on the same subject) then also engaged in farming in Madison County as a prospect for such insurance. In preliminary conversation respecting the insurance program, the defendant, among other matters, asked Albracht about the extent in bushels per acre for which his farm would be insurable. Albracht stated that on the basis of former experience and with due regard to the quality of the defendant's farm Albracht thought the farm's insurable base ought to be about nineteen bushels per acre, but that the determination of the base was entrusted to the appropriate committee, acting under authority of the corporation. Albracht did not represent or guarantee that a nineteen bushel per acre base would be resolved upon or allowed. In the course of the conference,

the defendant signed a regular application for wheat crop insurance 'for the three years 1946, 1947 and 1948 upon the wheat to be grown on his land in the insured percentage of seventy-five percent. On August 27, 1945 the county committee, through one of its members, certified its recommendation of the application's acceptance and on October 18, 1945 the corporation's formal acceptance was endorsed on the application. In due course, the committees both county and state recommended, and the corporation approved, the determination of thirteen bushels as the base on which the wheat crop on the defendant's farm was insured.

The defendant carried the contract thus resulting through 1946 and paid the determined premium for that year. That payment was made at the Madison county committee's office on an inexactly identified date in August or late July in 1947. And at the time of the payment then made the defendant orally told a young woman clerk in the office (not otherwise identified by the evidence) that "he was done with the wheat insurance program" and wanted to have his insurance discontinued. Neither then nor at any other time did he give or attempt to give written notice of cancellation. The defendant never entered into a new three-year federal wheat crop insurance contract in respect of his wheat production, or into any wheat crop insurance contract with the corporation other than the one initiated by his application of August 23, 1945.

The defendant, on demand for payment of the charge or premium for the coverage for 1947, refused to make such payment; and that is the item in suit.

The court is aware of a conflict in the evidence touching the exact conversation between the defendant and Albracht on August 23, 1945, and that Kossmann who heard it testified in support of the defendant's contention that he was unconditionally promised that the acreage base for his farm would be nineteen bushels. But the court is persuaded that Albracht's testimony on the point was true. He was obviously a reluctant witness for the plaintiff,

sympathetic with the interests of the defendant, his neighbor. And Kossmann's testimony was quite unconvincing, for while the defendant's application of August 23, 1945 was a new ·one, Kossmann then made a renewal application and had formerly been in the crop insurance program and had experience with the method of determining the insured bases for farms. He knew that, at the most, Albracht on August 23, 1945 could only make an estimate of what the defendant's insurable basis might be in bushels per acre. It is difficult to suppose that, with his background, he was led, as his testimony suggested, to suppose that both he and the defendant were being given final assurance of a coverage to the extent of nineteen bushels per acre. The language of the application itself would also seem to be irreconcilable with a positive commitment at its date to any exact number of bushels for its coverage. The court is unconvinced by the testimony of the defendant and Kossmann respecting the conversation.

■ Under the facts, the court's judgment must be for the plaintiff and against the defendant in the full amount of the complaint's prayer. ·

■ Insurance of the character under examination was originally provided by the Federal Crop Insurance Act, 52 Stat. at Large 72, enacted February 16, 1938, which has since been amended on several occasions, notably with a view to the extension of the coverage to crops other than wheat. See 7 U.S.C.A. §§ 1501–1518. The declared purpose of the act in its initial conception was "to promote the national welfare by alleviating the economic distress caused by wheat-crop 'failures due to drought and other causes, by maintaining the purchasing power of farmers" etc. 7 U.S.C.A. § 1502. Its operations were statutorily effected through the instrumentality of the corporation, "created" by the Act "as an agency of and within the Department of Agriculture", with its capital stock subscribed and wholly owned by the United States. 7 U.S.C.A. §§ 1503, 1504. It is obvious, therefore, that the corporation is simply a device through which the United

States of America itself provides the insurance within the design of the Act.

The statutory grant to the corporation of the power to insure is limited to insurance "upon such terms and conditions not inconsistent with the provisions of this chapter as it may determine". 7 U.S.C.A. § 1508(a). By 7 U.S.C.A. § 1506(e) the corporation is granted authority to "adopt, amend, and repeal bylaws, rules, and regulations governing the manner in which its business may be conducted and the powers granted to it by law may be exercised and enjoyed". And by 7 U.S.C.A. § 1516(b), "The Secretary (of Agriculture) and the Corporation, respectively, are authorized to issue such regulations as may be necessary to carry out the provisions of this chapter." Within that authority the corporation from time to time has adopted regulations limiting and governing its operations. Those pertinent to the crop years 1946, 1947 and 1948 were published in 10 Federal Register at pages 7124, 9768, 10345, 11881 and 13750, and 11 Federal Register at pages 1585 and 1841. Only brief references to, and quotations from, them need be made; and earlier regulations upon the subject as well as modifications subsequent to the dates involved in this action may be disregarded.

Two related sections of the regulations in force at the date of the defendant's application are instructive upon the extent to which production was then insurable. The formula for insurance coverage is set out in this manner: "The insured production for each insurance unit for each year under the contract shall be the number of bushels of wheat determined by multiplying the insured acreage by the average yield per acre, by the insured percentage (50 or 75 percent), and by the insured interest in the crop at the time of seeding. If more than one average yield has been established for the insurance unit, the insured production shall be computed separately, using the applicable acreage for each yield, and the total of such computed amounts shall be the insured production for the insurance unit." The authority to establish average yields and the manner of its exercise are thus prescribed: "The Corporation shall establish average yields of wheat for farms on the basis of the recorded or appraised yields for a representative period of years and shall, where necessary, adjust such yields so that the average yields for farms in the same area which are subject to the same conditions shall be fair and just."

Upon the question of cancellation of a contract by the insured, Section 418.3(d) of the applicable regulation provides: "The insured may cancel the insurance contract as it relates to future crops by entering into a new three-year contract, if one is offered, but such cancelation shall be effective only for crop years covered by the new contract. The insured may cancel the insurance contract as it applies to the third year by giving written notice to the Corporation by mail within one year after the closing date as defined in § 418.45 hereof."

Proceeding to the defendant's assertion that his application for insurance was procured through misrepresentation, by Albracht as the Corporation's agent, of the extent of insurance coverage, the court encounters two equally insuperable barriers to his maintenance of that position. The first is of fact, the second of law.

From the factual finding upon the point, it has already been made clear that the court considers that the defendant has failed to prove the misrepresentation he alleges. The record is not without some evidence in his behalf responsive to the issue, but the compulsion of credibility is against him.

And even if the defendant's version of the conversation of August 23, 1945 were accepted, it could not serve him as an effective defense to the plaintiff's claim. The representation, attributed to Albracht, to the effect that the defendant's wheat yield would be insured annually to the extent of nineteen bushels per acre was clearly beyond his authority. The system of yield insurance set up in the regulations, from which limited quotations have been made, is not one offering individual contracts to customers with initially determinable and fixed and certain coverage and subject to separate engagement between the corporation and each insured farmer. On the contrary, the basis of coverage is

left by the regulation to determination, according to a prescribed formula, by the corporation through its proper representatives, and, at least in the case of an original contract, is not determinable at the time of the making of the application for insurance.

The defendant knew that he was dealing not with a private insurance corporation but with an agency of the United States government; and, stern as the rule may be, he was bound to know the limitations upon Albracht's authority, and in the event of, and in reliance upon, any excess of that authority may neither fasten responsibility upon the plaintiff nor escape liability which otherwise rests upon him.

The rule which requires that conclusion has frequently, and in many settings received judicial construction and approval. But its general application need not be demonstrated, for it has been authoritatively reiterated with immediate reference to the statute and regulations now before the court. In Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 3, 92 L.Ed. 10, the Supreme Court considered the plight of a wheatgrower who, without actual knowledge of a provision of a regulation promulgated under the Federal Crop Insurance Act eliminating from eligibility to insurance "spring wheat * * * reseeded on winter wheat acreage", applied to the corporation's local agent for insurance on a large acreage of wheat, stating orally to the agent, but not inserting in writing in the application, that most of the acreage was being reseeded on winter wheat ground, and after acceptance of the application and a destructive drought, sought to recover from the corporation. Recovery was denied on the ground that the wheatgrower was bound by the regulation despite his lack of knowledge of it. Among other things, the court said:

"Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e. g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791; United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40, and see, generally, In re Floyd Acceptances, 7 Wall. 666, 19 L.Ed. 169.

"If the Federal Crop Insurance Act had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat. Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it. Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government. And so Congress has legislated in this instance, as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy. See § 516(b), 52 Stat. 72, 77, 7 U.S.C. § 1516(b), 7 U.S.C.A. § 1516(b). Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307, 44 U.S.C.A. § 307.

"Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance. The oft-quoted observation in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all

courts to observe the conditions defined by Congress for charging the public treasury. The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government. Indeed, not only do the Wheat Regulations limit the liability of the Government as if they had been enacted by Congress directly, but they were in fact incorporated by reference in the application, as specifically required by the Regulations."

What was there said in its proper context applies equally in the instant setting. The same principle was held to deny to the holder of a federal crop insurance contract the benefit of an asserted waiver of the limitation by regulation upon the time for filing proof of loss, Felder v. Federal Crop Insurance Corporation, 4 Cir., 146 F.2d 638. It likewise operated explicitly to deny to the insured in Mock v. United States, 10 Cir., 183 F.2d 174, the right to rely on an alleged waiver of the filing of any proof of loss, and, inferentially though not as a matter of necessary decision in the same case, to deny the right of a grower to rely on representations such as the defendant advances here. And in Scaife v. Federal Crop Insurance Corporation, 8 Cir., 167 F.2d 152, it bound a cotton grower exclusively to a method prescribed by regulation for determining the time of loss. On each of those occasions the conclusiveness, upon growers seeking crop insurance, of the Act and the regulations issued under it was affirmed. See also Frier v. Federal Crop Insurance Corporation, 5 Cir., 152 F.2d 149.

■■ The defendant has also failed to establish his asserted cancellation of the contract for 1947 and thereafter. The provision of the regulation dealing with cancellation has already been quoted. Its appropriateness to its subject and to the natural necessities of such a venture is at once apparent. It is in no wise inconsistent with the Act. A large measure of certainty and stability of volume is essential both to the achievement of the declared benefits of the statute and to the financially secure administration of the program. That the technique of cancellation prescribed by the regulation is exclusive may be gathered from the quoted pertinent language of the regulation. Its exclusiveness is also supported by the reasoning of Felder v. Federal Crop Insurance Corp., supra, which applies the maxim *expressio unius est exclusio alterius* to that portion of the regulations implementing the Federal Crop Insurance Act which has to do with the granting of an extension of time for the filing of proof of loss. It is not even contended, and it could not be shown, that the defendant ever pursued or attempted to pursue the course for cancellation prescribed by the Regulation. No new three year insurance contract was made or sought in his behalf. And the year of the contract whose insurance is now involved is the second, not the third. So, the contract was not cancelled for the year 1947.

■ It may be observed simply and without extended discussion that there is no possible support for the defendant's challenge to the constitutional validity of the pertinent regulation. Any such question has been settled beyond doubt or the necessity of extended examination. The many occasions on which the Supreme Court has sustained the legality of regulations within the framework of their enabling statutes implementing other somewhat comparable modern acts of congress need not be recalled or discussed. The regulations for the administration of the identical act now before the court were emphatically approved and enforced in Federal Crop Insurance Corporation v. Merrill, supra, and their validity was recognized and they were enforced in the several other cases already cited.

Judgment is, therefore, being entered in accordance with the plaintiff's prayer.