**UNITED STATES of America,**
**Plaintiff,**

v.

**James W. SHAW, Defendant.**

**Civ. No. 2511.**

United States District Court
D. North Dakota, Northwestern Division.

Jan. 24, 1956.

Ralph B. Maxwell, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Bruce M. Van Sickle (of McGee & Van Sickle), Minot, N. D., for defendant.

REGISTER, District Judge.

This case was tried to the Court without a jury.

The Complaint contains two counts. Count I is an action by the United States of America against the defendant to recover the unpaid premium for the year 1950 on a contract of wheat crop insurance issued by the Federal Crop Insurance Corporation; Count II is an action to recover the unpaid premium for the year 1950 on a similar contract of flax crop insurance issued by the same Corporation.

In his Answer defendant denied any liability by virtue of said policies of insurance; he further pleaded that the provisions for interest, contained in the "note for premium", were usurious and in violation of the laws of this state, and, after referring to plaintiff's refusal to pay a loss claim for the year 1949, alleged as follows:

"12. That upon being advised of the plaintiff's refusal to pay, and while this defendant was in the office of the agent of the Federal Crop Insurance Corporation at Minot, North Dakota, this defendant requested the necessary papers in order to cancel all of his insurance. That at that time the agent of the Federal Crop Insurance Corporation advised this defendant that the agent would not furnish him with the necessary papers but that the agent would see the defendant in the Spring and complete the cancellation.

"13. That in the Spring of 1950 the agents of the Federal Crop Insurance Corporation came out and requested the defendant sign a new contract. That the defendant refused to do so. That the agents of the Federal Crop Insurance Corporation assured the defendant that it would not be necessary for him to do anything further to effect the cancellation of the policy and that the agents of the Federal Crop Insurance Corporation caused the defendant to refrain from giving written notice of cancellation by their representations above set out."

Certain essential facts were adduced at the trial; there is no substantial conflict in the testimony.

Written application for wheat crop insurance was duly made by the defendant on April 9, 1949; such application was duly recommended and certified on April 11, 1949, and was duly accepted by the Corporation on May 4, 1949. Similar application, recommendation and certification and acceptance were made and done as to flax crop insurance. The

respective policies were thereafter, on May 4 and May 10, 1949, duly issued and delivered. Each accepted application and respective policy constituted the contract involved.

Contained in each of said applications were the following provisions:

"It is understood and agreed that this application when accepted by the Corporation and the wheat (flax) crop insurance policy issued by the Corporation shall constitute the contract, * * *", and

"If this application is accepted by the Corporation the contract shall be in force and effect for the 1949 crop year and, subject to the provisions of the policy, shall continue for each succeeding crop year thereafter until either party gives to the other party, on or before the applicable cancellation date shown in the policy, written notice of cancellation effective at the beginning of the succeeding crop year. Failure to cancel the contract as herein provided shall constitute acceptance of any changes in premium rates, coverages, and the policy. It is further understood and agreed that no terms or conditions of the contract shall be waived or changed except as authorized in writing by a duly authorized officer of the Corporation."

The wheat crop insurance policy provides, in part, as follows:

"9. Life of contract, cancellation thereof. (a) Subject to the provisions of paragraph (d) of this section, the contract shall be in effect for the 1949 crop year and shall continue in effect for each succeeding crop year until either party gives to the other party, on or before the cancellation date of any year, written notice of cancellation effective beginning with wheat seeded for harvest in the next calendar year. * * *"

The cancellation date is stated to be December 31. On the policy, under "Points for the Insured to Remember", is the statement: "Length of Contract—This contract remains in effect from year to year until cancelled by either party".

Paragraph 29 of said wheat crop policy is quoted as follows:

"29. Modification of contract. No notice to any representative of the Corporation or the knowledge possessed by any such representative or by any other person shall be held to effect a waiver of or change in any part of the contract, or to estop the Corporation from asserting any right or power under such contract, nor shall the terms of such contract be waived or changed except as authorized in writing by a duly authorized officer or representative of the Corporation; nor shall any provision or condition of the contract or any forfeiture be held to be waived by any delay or omission by the Corporation in exercising its rights and powers thereunder or by any requirement, act, or proceeding on the part of the Corporation or of its representatives relating to appraisal or to any examination herein provided for."

The provisions of sections 9 and 29 of said policy are substantially the same as those like numbered paragraphs set out in the flax crop insurance policy. In said flax crop insurance policy, however, under "Points for the Insured to Remember" is the following:

"Length of contract. This contract remains in effect from year to year until cancelled by either party in accordance with section 9 of the policy, on or before December 31 of any year, effective for the crop year beginning in the next calendar year.",

and no separate date table showing cancellation date is a part thereof or appears thereon.

In the fall of 1949 defendant submitted a claim for loss due to drouth and insect damage to his 1949 crops. The loss was reported on October 17, 1949. This claim was rejected by the Corporation,

and the defendant, being dissatisfied with the action taken, testified that some three to five weeks thereafter he called at the local Federal Crop Insurance Corporation in Minot, North Dakota, concerning the same. Defendant testified that he talked with people in said office (people he assumed were acting for said Corporation and who apparently were familiar with the case, as they had the file, and who attempted to explain the reason for the rejection of defendant's claim). At the conclusion of this conversation, relating to the refusal of the Corporation to pay the loss claimed, the following statements, according to defendant's testimony, were made by the defendant:

"I demanded that it be cancelled."
* * *

"Well, we talked about the insurance and I found out I wasn't going to collect on it. I asked how soon I could get out from under that program. I said I wanted no more part of it." * * *

"There were quite a few other farmers in the office, and I got the impression I was being brushed off." * * *

"I was told I won't have to do anymore about it until spring." * * *

Defendant further testified that in the spring, after the wheat had been sown, but before flax had been seeded, two men came to his farm and told him he would have to sign up. He refused and thereafter they requested permission to measure the fields. This request, too, was refused, whereupon the measurements were taken from the road. Also, according to defendant's testimony, these men later returned to the field and informed him he still had two more days within which to sign up, and he again refused. Defendant testified he did not know who the persons were with whom he had talked in the office, but he thought one was the local manager of the Corporation. This person, Mr. Joe Bucek, office manager, testified he had no recollection of any such conversation. Defendant concedes that neither then nor at any other time did he give or attempt to give written notice of cancellation. Neither did the defendant ever enter into a new three-year Federal wheat or flax crop insurance contract in respect of his wheat and flax production, or into any wheat or flax crop insurance contract with the Corporation other than the one initiated by his application in 1949, as aforesaid.

Defendant's contention is, in effect, that the contract requirement of written notice of cancellation was waived, or that the plaintiff is estopped to assert, as a defense, such failure of written notification.

The Federal Crop Insurance Corporation, an agency of the Department of Agriculture, was created by the Federal Crop Insurance Act for the purpose of providing Government insurance against loss in yield of crops due to unavoidable causes.

The regulations promulgated by the Federal Crop Insurance Corporation under the Federal Crop Insurance Act have the effect of law. Federal Crop Insurance Act, 7 U.S.C.A. §§ 1501 through 1518; Felder v. Federal Crop Ins. Corp., 4 Cir., 146 F.2d 638, 640.

In the Felder case, supra, defendant contended that the provision of the contract relative to limitation of time within which proof of loss must be filed had been waived by the Corporation. As to this, the Court said: "The Regulations and the provisions of the insurance contract conclusively answer this contention. One, and only one, method is provided for extending the time specified, and that is by an extension in writing by the Corporation. There was no such extension here. Expressio unius est exclusio alterius." In the instant case one, and only one, method of cancellation of the insurance contract was provided, and that by written notice. Defendant failed to comply therewith.

Where defendant knew he was dealing with an agency of the United States such as the Federal Crop Insurance Corporation, he was bound to know the limitations upon the authority of the agent of the Corporation and in event of reliance upon any excess of that authority he could not fasten liability upon the Government nor escape liability which otherwise rested upon him.

■ Regulations of the Federal Crop Insurance Corporation respecting cancellation of crop insurance contracts were valid as consistent with the Crop Insurance Act, and those same regulations manifested the intent that the method of cancellation was to be exclusive. United States v. Feldman, D.C., 93 F.Supp. 980.

Except insofar as the question of estoppel is herein involved, much of the opinion of the Court in the Feldman case, supra, is applicable and could very appropriately be quoted.

■ It clearly appears that any representations of an agent of the Corporation, if made, to the effect that the defendant "wouldn't have to do anymore about the insurance until spring", or at any time or in any manner inconsistent with the contract, were clearly invalid as unauthorized, and the defendant was bound to know the limitations upon the authority of such agent or agents. United States v. Feldman, supra. See also: Mock v. United States, 10 Cir., 183 F.2d 174; Frier v. Federal Crop Insurance Corporation, 5 Cir., 152 F.2d 149, and Scaife v. Federal Crop Ins. Corp., 8 Cir., 167 F.2d 152.

Counsel for defendant contends that by virtue of the acts and statements of agents of the Corporation, hereinbefore referred to, the plaintiff is bound by the principle of estoppel; he distinguishes the facts in the instant case from those above cited and calls specific attention to the statement of the Court in the Felder case, supra, that "We might point out that this case involves no element of technical estoppel". The Court therein further stated: "No act of any official

prevented the timely filing of proofs of loss; but, on the contrary, the period for filing such proofs had already elapsed before even the commission of any of these acts."

■ An equitable estoppel ordinarily may not be invoked against a government or public agency functioning in its governmental capacity; but where the elements of an estoppel are present it may be asserted against the government when acting in its proprietary capacity. 31 C.J.S., Estoppel, § 138, pp. 403, 404; 19 Am.Jur., Estoppel, Section 169, p. 822.

■ In order to constitute an equitable estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice. 31 C.J.S., Estoppel, § 67a(1), p. 254; 15 Words and Phrases, Estoppel, pp. 608–614, incl.

■ Estoppel cannot be invoked by one who knew the facts or was negligent in not knowing them. Where facts were equally known to both parties, or are facts which the one invoking estoppel ought, in the exercise of reasonable prudence, to know, there can be no estoppel. Froslee v. Sonju, 209 Minn. 522, 297 N. W. 1, 3, 4; Mescall v. W. T. Grant Co., 7 Cir., 133 F.2d 209, 211.

Where the facts are equally known to both parties, there can be no estoppel; where both parties have equal means of ascertaining the facts, then, too, there can be no estoppel. Uhlmann Grain Co. v. Fidelity & Deposit Co., of Maryland, 7 Cir., 116 F.2d 105, 109.

To constitute an equitable estoppel there must exist a false representation or concealment of facts made with knowledge, actual or constructive, and the party to whom it was made must have been

without knowledge or means of knowledge of the real facts. Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288. See also Thompson v. North Dakota Workmen's Compensation Bureau, 66 N. D. 756, 268 N.W. 710; Conner v. Caldwell, 208 Minn. 502, 294 N.W. 650, 653.

In the light of all evidence, there does not appear to be any substantial basis for defendant's claim of estoppel. The only basis for such a claim is the testimony of defendant as to the actual conversation which occurred in the local office of the Corporation in the late fall of 1949. As to the defense of equitable estoppel, any acts and statements of agents of the Corporation which occurred in the spring of 1950 (and subsequent to December 31, 1949, which was the "cancellation date") cannot be considered.

The requirement as to written notice of cancellation was contained not only in the applications, but also in the respective policies of insurance. From his appearance and demeanor on the witness stand, the defendant appeared to be intelligent and informed; his testimony indicated he is an experienced farmer accustomed to transacting business relating to his farming business. He was bound by the express terms of such contract; the provisions thereof were known to him, or ought, "in the exercise of reasonable prudence", to have been known to him; he had possession of the policies and thereby had complete and free access to the facts; and, he had "equal means of ascertaining the facts" with the Corporation. Attention is again directed to paragraph 29 of the respective policies, knowledge of which on the part of the defendant must be presumed.

Judgment will be granted in favor of the plaintiff in accordance with the plaintiff's prayer. Findings, Conclusions and Order in accordance herewith will be prepared and submitted by counsel for plaintiff.

It will be so ordered.