The COCA-COLA BOTTLING COMPANY OF PUERTO RICO, Inc., Defendant, Appellant,

v.

Hiram NEGRON TORRES, Plaintiff, Appellee.

No. 5215.

United States Court of Appeals First Circuit.

May 7, 1958.

Rehearing Denied July 7, 1958.

Carmen B. Hernandez, San Juan, P. R., James R. Beverley, San Juan, P. R., on the brief, for appellant.

Appellee submitted on the record appendix without brief or oral argument, by leave of Court.

Before MAGRUDER, Chief Judge, and WOODBURY and STALEY, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellee, a citizen of Puerto Rico, brought an action in the Superior Tribunal, Mayaguez Section, sounding in tort for negligence against the defendant-appellant, a Delaware corporation doing business in Puerto Rico, and Crown Beverages, Inc., a Puerto

Rican corporation, to recover damages for personal injuries which he alleged he sustained as a result of his discovery of the putrified body of a small mouse in a bottle of Coca-Cola from which he was drinking. The defendant-appellant, filing an affidavit, which was not controverted, to the effect that Crown Beverages, Inc., had sold all its assets and gone wholly out of business years before in November, 1946, and alleging that the plaintiff had joined it as a defendant only to defeat federal jurisdiction, removed the case to the court below under Title 28 U.S.C. § 1441 et seq. and 48 U.S.C.A. § 864 where it came on for trial without a jury, no timely request therefore having been made. On the basis of the evidence adduced at the trial the court below entered a judgment for the plaintiff in the amount of $850 against the Coca-Cola Bottling Company of Puerto Rico, Inc., Crown Beverages, Inc., having been dropped as a defendant by stipulation, and Coca-Cola Bottling Company thereupon took this appeal.

The District Court's findings support the allegations in the plaintiff's complaint. It found that the defendant was the sole producer, seller and distributor of Coca-Cola in Puerto Rico, that a retail merchant named Sixto Ruiz purchased all the Coca-Cola for his establishment in Sabana Grande, P. R., directly from the defendant through one of its agents, that on September 20, 1952, the plaintiff entered Ruiz' establishment and ordered a bottle of Coca-Cola from one of his employees, that the employee took a bottle of the beverage, part of a consignment received by Ruiz a few days before, from a refrigerator, opened it, and handed it to the plaintiff, and that the plaintiff put the bottle to his lips but after the first swallow complained of the taste of the beverage and then, discovering that the bottle contained the putrid body of a small mouse, immediately became violently sick to the stomach, a condition which lasted for several days and rendered him wholly unable to work for four weeks and unable to work full time for four weeks more.

The complaint is couched in the language of an action sounding in tort for negligence, it being averred that the reason for the putrid body of the mouse in the sealed bottle of Coca-Cola "is either or both the defendants' guilt, negligence, carelessness, lack of skill, and inconsiderate conduct." And, although once or twice during the trial mention was made of the possibility of imposing liability on the defendant for breach of implied warranty of fitness for specific use, the case was tried on the tort theory of liability, the defendant introducing extensive evidence of the great care and elaborate precautions taken in preparing and bottling its beverage. The District Court, however, did not consider the question of the defendant's negligence but found it liable for breach of warranty. Relying quite properly upon Castro v. Payco, Inc., 75 P.R.R. 59, 68 (1953), for the proposition that Act No. 72 of April 26, 1940, known as the "Puerto Rico Food, Drug and Cosmetic Act," made the general rule of implied warranty, whereby one who serves or sells food for human consumption is held by implication to warrant the wholesomeness of his product for its intended use, applicable in Puerto Rico, the court found defendant liable "in delivering, through its agent, to the establishment of Sixto Ruiz, for public consumption, a bottle of Coca-Cola which, on being sold to the plaintiff and ingested by him, was found to contain a dead putrid small mouse and was, thus unwholesome, contaminated and unfit for the human consumption for which defendant had placed said beverage on the market." [1]

---

[1]. There can be no doubt that putrid matter in a bottle of Coca-Cola is within the ban of the Puerto Rico Food, Drug and Cosmetic Act for the term "food" is defined therein to mean "articles used for food or drink for man or other animals" and the Act provides that "a food shall be deemed to be adulterated * * * if it consists in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance, or if it is otherwise unfit for food."

It is true that changing the basis for the defendant's liability from breach of an obligation *ex delicto* to breach of an obligation *ex contractu* eliminated the necessity for considering the defendant's evidence of the care with which it prepared its product for the market. But we do not see how this change resulted in any prejudice to the defendant. The change did not thrust any unexpected factual burden upon the defendant, as would have been the case were the situation reversed and an action brought and tried for breach of warranty had been decided as one for negligence. The question is whether the allegations in the complaint and the evidence introduced in support thereof at the trial are adequate to support an action for breach of the implied warranty of fitness for specific use.

In Castro v. Payco, Inc., supra, the Supreme Court of Puerto Rico, with a modification not material here, affirmed a judgment awarding damages to the plaintiff for personal injuries of the same general nature as those suffered by the plaintiff herein caused by eating unwholesome ice cream. The award in that case was sustained on the theory of breach of implied warranty, but the ice cream was purchased by the plaintiff directly from the defendant, the manufacturer, through one of its sales agents. Thus, in Castro there was privity of contract between the plaintiff-consumer and the defendant-manufacturer which is not the situation in the case at bar, for here the plaintiff purchased the Coca-Cola from an independent retailer. The question therefore is whether under the law of Puerto Rico there must be privity of contract for a consumer of unwholesome food to recover his damages from the manufacturer in an action for breach of warranty.

The District Court did not address itself specifically to this question. Nor has any decision of the Supreme Court of Puerto Rico directly in point been cited to us, nor have we found one. Our decision must therefore rest upon general considerations.

Whether correctly so or not,[2] the orthodox rule, at least years ago, was that there had to be privity of contract between the parties to an action for breach of warranty. However, a number, although perhaps still a minority, of courts have for years recognized an exception to the general doctrine in the case of medicines and food stuffs and held that the manufacturer warrants to the ultimate consumer that his article is fit for human consumption. See Rachlin v. Libby-Owens-Ford Glass Co., 2 Cir., 1938, 96 F.2d 597, 600; Jacob E. Decker & Sons, Inc., v. Capps, 1942, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479; Davis v. Van Camp Packing Co., 1920, 189 Iowa 775, 176 N.W. 382, 17 A.L.R. 649; Catani v. Swift & Co., 1915, 251 Pa. 52, 95 A. 931, L.R.A.1917B, 1272, writ of error dismissed per stipulation 1916, 241 U.S. 690, 36 S.Ct. 554, 60 L.Ed. 1238. See, also, Products Liability: Part I, The Protection of the Injured Person, 42 California Law Review 614, summarized in 6 Law Review Digest No. 1, pages 37, 52 et seq.; 1 Williston on Sales (Rev. Ed.) §§ 244, 244a.

We think this exception rests upon a sound basis in view of present day methods of merchandising products for human consumption, particularly those sold in cans, capped bottles or sealed containers.

2. Professor Williston in volume 1 §§ 195–197 of his work on Sales (Rev.Ed.) asserts that historically the requirement of privity has no place in actions on warranties because originally redress for breach of warranty was given by an action for deceit, *i. e.* for a false and fraudulent misrepresentation, which sounds distinctly in tort; that redress by action sounding in contract was a later development to give an alternative remedy; and, furthermore, that the obligation on an implied warranty is imposed *by law irrespective of a promise by the seller.* Moreover, the requirement of privity leads only to circuity of action for "it is generally held that a buyer who has bought goods with a warranty may recover damages which he has been compelled to pay a subpurchaser to whom the goods were sold with a similar warranty." Id. § 244.

The practical basis for the exception is well stated in language fully applicable to the facts in the case at bar in the recent case of Rogers v. Toni Home Permanent Co., 1958, 167 Ohio St. 244, at pages 248 and 249, 147 N.E.2d 612, at page 615, wherein it is said:

"Occasions may arise when it is fitting and wholesome to discard legal concepts of the past to meet new conditions and practices of our changing and progressing civilization. Today, many manufacturers of merchandise, including the defendant herein, make extensive use of newspapers, periodicals, signboards, radio and television to advertise their products. The worth, quality and benefits of these products are described in glowing terms and in considerable detail, and the appeal is almost universally directed to the ultimate consumer. Many of these manufactured articles are shipped out in sealed containers by the manufacturer, and the retailers who dispense them to the ultimate consumers are but conduits or outlets through which the manufacturer distributes his goods. The consuming public ordinarily relies exclusively on the representations of the manufacturer in his advertisements. What sensible or sound reason then exists as to why, when the goods purchased by the ultimate consumer on the strength of the advertisements aimed squarely at him do not possess their described qualities and goodness and cause him harm, he should not be permitted to move against the manufacturer to recoup his loss. In our minds no good or valid reason exists for denying him that right. Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products. The warranties made by the manufacturer in his advertisements and by the labels on his products are inducements to the ultimate consumers, and the manufacturer ought to be held to strict accountability to any consumer who buys the product in reliance on such representations and later suffers injury because the product proves to be defective or deleterious. See Prosser on Torts (2 Ed.), 506, Section 84; 1 Williston on Sales (Rev. Ed.), 648 to 650, Section 244a."

We cannot, of course, be certain that the Supreme Court of Puerto Rico would share our view and find merit in the exception to the general rule requiring privity between buyer and seller in actions for breach of implied warranty of fitness for intended use when articles for human consumption sold in sealed containers are involved. Nevertheless we feel justified in believing that the theoretically sound basis for the exception, and its intrinsic merit, would lead the Supreme Court of Puerto Rico to recognize the exception and hold when the occasion arises that as to the wholesomeness of food the implied warranty of fitness for human consumption is not grounded so much upon contract as upon the strong public policy, as clearly expressed in the local pure food and drug act, to preserve human health and even life itself. Indeed, it may even be that that court had future recognition of the exception in mind when with reference to the Puerto Rico Food, Drug and Cosmetic Act it said in Castro v. Payco, Inc., supra, at page 68:

"When the manufacturer of an article used for food offers it for sale for human consumption, the presumption is that he has complied with the Act, that he has placed on the market an unadulterated article and that he warrants that it is fit for its intended use."

While we cannot be sure, we think the court below correctly forecast the development of the law of Puerto Rico with respect to the requirement of privity in actions for breach of the implied warranty of the fitness of food for its specific use.

■ The defendant contends, however, that even if its warranty be held to run to the plaintiff as the consumer it nevertheless cannot be found liable. Pointing to the evidence of its extreme care in manufacturing its beverage and to the undisputed evidence that on delivery of the Coca-Cola to Ruiz' establishment it was stored for a few days in an open shed behind his premises where it was open to access by anyone, the defendant says that it cannot in reason be found that the Coca-Cola had not been meddled with by some person or persons unknown before it was brought inside Ruiz' store for refrigeration prior to sale. We find no merit in the contention.

It is true that the Coca-Cola might possibly have been polluted by someone while it was stored in Ruiz' open shed. But evidence of an opportunity to tamper with the Coca-Cola falls short of evidence of actual tampering. For all that appears the bottle was tightly capped when it was opened just prior to delivery to the plaintiff, and while it may be that a skillful person could have uncapped the bottle, inserted the decayed body of a mouse, and then recapped the bottle in such a way as to escape detection, the probability that anyone did any such thing is at least remote. The question of tampering must be decided by balancing the probabilities and it seems to us more probable that in spite of the defendant's precautions the body of the mouse in some way escaped detection by the defendant's employees and was in the bottle when it was filled with the beverage at the defendant's plant than that it was inserted in the bottle by some malicious person while it was stored in Ruiz' shed. Thus we certainly cannot say that the District Court was "clearly erroneous" when it found that "The bottle sold to plaintiff had not been tampered with at any time prior to the moment when Ruiz' employee opened it and served it to plaintiff." See Coca-Cola Bottling Co. of Henderson v. Munn, 4 Cir., 1938, 99 F.2d 190, 192.

One more matter calls for consideration, and that is the defendant's contention that the District Court erred in denying its pre-trial motion under Rule 35 Fed.Rules Civ.Proc., 28 U.S.C. that the plaintiff be required to submit to a physical examination.

■ The language of Rule 35 is permissive in that it provides that while the court "may" order a party to submit to a psysical examination, it may do so "only on motion for good cause shown." Thus clearly the granting or denying of a motion for a physical examination rests in the sound discretion of the trial court. Bucher v. Krause, 7 Cir., 1952, 200 F.2d 576, 584, certiorari denied 1953, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404. The court in the case at bar denied the motion on the basis of the plaintiff's assertion that he was not seeking damages for any present suffering but only for past physical injury and emotional disturbance, and hence a physical examination would be useless since it would not show the extent of the injury he had suffered in the past from which he had wholly recovered. The ground for denying the motion is certainly sound. But the defendant contends that nevertheless over its objection the court permitted the plaintiff to testify: "I always felt bad. At this very moment when I remember that thing I feel bad." In view of the plaintiff's disclaimer of damages for any present injury, the court admitted this testimony only for whatever value it might have to show the severity of the plaintiff's past suffering. The court said that it would consider the evidence for no other purpose and there is nothing to indicate that the court did not do what it said. Indeed, the small size of its award of damages gives positive indication that the court kept its word to the letter.

A judgment will be entered affirming the judgment of the District Court.