**Emily Mann NEUMAN, Appellant,**

v.

**Robert Henry NEUMAN, Appellee.**

**No. 9604.**

District of Columbia Court of Appeals.

Argued Jan. 5, 1977.

Decided Aug. 18, 1977.

Laura Sager of the bar of the State of New York, New York City, pro hac vice, by special leave of the court, with whom Jane Dolkart was on the brief, for appellant.

Charles H. Mayer, Washington, D. C., for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

NEBEKER, Associate Judge:

This case presents an initial question of estoppel regarding an attempted appeal in forma pauperis by the wife from a divorce decree in favor of the husband. He remarried after notice that her effort to appeal had been abandoned in the face of a challenge to pauper status. The prejudice in the case arises from failure of service of appellate court pleadings on counsel for the husband. While we generally would be free to dismiss an appeal under these circumstances, we find it necessary first to look to the nature of the issues sought to be raised. We hold that appellant is estopped to assert a legal challenge to the divorce decree and to the method of computing the property award. We will consider the challenge to the custody order respecting issue of the marriage, as the interest of the children is paramount and, in any event, involves considerations independent of the reason for estoppel. The judgment of the trial court is affirmed in that respect.

The first divorce action between the parties was commenced in May, 1973, by Emily Neuman's complaint for a limited divorce on the ground of cruelty. Following this action, Mrs. Neuman took their three children to Florida where she and they remained until September of 1973. In his answer to the complaint, Robert Neuman denied appellant's allegations of misconduct, counterclaimed for custody of the children, averred that his wife had left the marital home without justification, and that she had committed adultery on a number of occasions prior to her departure. After two and one-half days of trial, during which evidence of Emily Neuman's marital infidelity was introduced, a consent order was agreed upon by the parties. Pursuant to this order, Emily Neuman's action for a limited divorce was dismissed with prejudice and she waived her rights to alimony and support. Robert Neuman was to have custody of the children and the exclusive use of the marital home. Additionally, at Mr. Neuman's insistence, a provision was added barring Emily Neuman from entering the home except to pick up the children in the course of visitation. The order was agreed to by the parties and dated December 5, 1973. Mrs. Neuman agreed to the decree to avoid a finding that she was an unfit mother because of her extra-marital affairs.

On May 8, 1974, Robert Neuman sought an absolute divorce on the ground of his wife's desertion on May 3, 1973, and he also asked that he be awarded custody of the children and sole ownership of the marital home. On July 10, 1974, Emily Neuman filed an answer denying the allegations of desertion and claimed an interest in the marital property. Four months later, Mrs. Neuman filed a motion for psychiatric examination of the three children and the parties to assist in resolving the custody issue. The motion was denied when the case came on for trial. Following the trial, an absolute divorce was granted to Mr. Neuman on the ground of desertion and the marital property was awarded solely to him.

Custody and visitation were ordered to continue as set out in the original consent order.

Mrs. Neuman contends that the trial court erred in granting the divorce on the ground of desertion since it was legally impossible for her to desert her husband in view of the consent order barring her return to the home. She also asserts error in the award of the marital home and furnishings to the husband. With respect to the custody of the children, it is Mrs. Neuman's view that honoring her request for a psychiatric examination was essential to proper resolution of that question.

The depth of our review now turns on the events that transpired in this court after notice of appeal. On February 25, 1975, the appellant, through counsel, lodged a timely motion for leave to appeal in forma pauperis. Under Rule 23(a), the Clerk of the trial court referred the motion to this court. Rule 23(a) is a modification of Rule 24, Federal Rules of Appellate Procedure, permitted by D.C. Code 1973, § 11–743, insofar as it removes the authority of the trial court to act on the forma pauperis motion. Therefore, unlike the procedures in the federal courts, the entitlement to appeal at public expense is initially determined by this court.

On March 7, 1975, Mr. Neuman, through counsel, filed an opposition to the motion containing a challenge to his wife's impecuniousness. On March 24, 1975, this court entered an order denying appellant's motion without prejudice to her making a more specific averment of poverty by way of a motion to reconsider. In early April of 1975, Mrs. Neuman timely filed a motion to reconsider the petition to proceed in forma pauperis. A challenge was made to these new assertions on an alleged discovery by Mr. Neuman that Mrs. Neuman was indeed quite gainfully employed contrary to her affidavit.[1] However, while the motion to reconsider was still pending, Mrs. Neuman filed a motion to withdraw her motion for reconsideration on April 28, 1975, stating that she had recently obtained employment. Service of this motion by mail was deficient, as will be discussed below. By separate letter to the Clerk, appellant also requested him to file the notice of appeal which was earlier lodged with the forma pauperis motion. However, a copy of that letter was not sent to Mr. Neuman's counsel. The motion to withdraw the request to reconsider the earlier denial did not contain an expression of intent to prosecute the appeal though, arguably, it might have been interpreted that way. Unexplained is why the request and the statement of intent contained in the letter were not made a part of the motion or the subject of a separate motion.

In support of his motion to dismiss the appeal, counsel for Mr. Neuman informed this court at oral argument that he did not receive the motion to withdraw until sometime after he had received the order of this court stating that pursuant to that motion the application for appeal at public expense was deemed withdrawn. Upon receipt of that order, counsel for Mr. Neuman viewed the decree of divorce to be final as efforts at appeal were closed. He thus advised Mr. Neuman that he was free to remarry because Neuman had earlier expressed a desire to do so when he could. We are told that Mr. Neuman thereupon remarried. Subsequently, the motion to withdraw was received by counsel. In light of this sequence of events it is not relevant to decide whether the wording of that motion, in the absence of receipt of the letter, might arguably have implied a desire to proceed independently of the forma pauperis effort.

Counsel for Mr. Neuman further advised this court that, consistent with the late

---

1. The opposition contained a letter from Mrs. Neuman to one of the children revealing that a parade had recently taken place in the vicinity of "my office". It was also asserted that two telephone calls made thereafter confirmed Mrs. Neuman's current and past employment. There were affidavits to the contrary by the purported employer. We do not find it necessary to have this factual dispute resolved as the matter can be decided without recourse to whether the appeal should be dismissed as a punitive matter. *See McKelton v. Bruno*, D.C. App., 264 A.2d 493, 496 n.3 (1970).

arrival of the motion to withdraw, he had received other pleadings in a tardy fashion. Although the certificate of service on those pleadings was dated the same as when they were filed, the postmark was substantially later but followed with prompt mail delivery. He also informed the court of a conversation with Mrs. Neuman's counsel wherein he brought this tardiness in service to her attention. Her response acknowledged that she was a full-time faculty member of a local law school and that she had used the campus mail as a depository for pleadings mailed to counsel, no doubt delaying substantially their ultimate deposit in the United States mail. There has been no challenge to these assertions and we have no reason to believe that all counsel have been anything but truthful and candid respecting these events.

■ In the present appeal, appellant does not contend that she wishes to attempt a reconciliation with her former spouse. Instead, she merely seeks to have the decree of divorce set aside, a more favorable division of the marital property, and a change in the custody of the children. It must be remembered, however, that divorce proceedings involve public interests as well as private rights and when the interests of an innocent third party are involved, courts should take great care to see that a former divorce decree is not lightly set aside. *Curry v. Curry*, 65 App.D.C. 47, 48–49, 79 F.2d 172, 173–74 (1935).

■ On several occasions, the courts of this jurisdiction have declined to vacate a divorce decree by applying the principle of equitable estoppel. *Clagett v. King*, D.C. App., 308 A.2d 245 (1973); *Saul v. Saul*, 74 App.D.C. 287, 122 F.2d 64 (1941). Concededly, a central consideration in those cases was that a party who had actively participated in the procurement of the decree should not later be permitted to attack its validity. However, the relevance of the estoppel concept in those cases can be seen in the context of this case when the interest of innocent third parties is focused upon. In determining whether to apply the bar of equitable estoppel, a court "must consider all the factors of the particular case at bar, the parties involved, the effect of the ultimate decision on third parties who are not before the court, the nature of the rights sought to be vindicated and, as well, public policy as expressed by pertinent statutes and prior judicial declarations." *Sears v. Sears*, 110 U.S.App.D.C. 407, 410, 293 F.2d 884, 887 (1961).

■ An examination of judicial decisions in other jurisdictions reveals a concern for the interests of innocent third parties that is in accordance with the concern expressed in the decisions of this jurisdiction. In upholding the validity of a divorce that was procured through perjury on the part of the husband, the New Jersey court held that the possibility of irregularizing the status of a present marriage was "more deleterious to decency, good morals and the welfare of society than the lesser evil of letting the judgment rest." *Shammas v. Shammas*, 9 N.J. 321, 88 A.2d 204, 211 (1952). Likewise, in *Pryor v. Pryor*, 240 Md. 224, 213 A.2d 545 (1965), the Maryland court referred to the "strong public policy . . . [of] sustaining the finality of judgments and decrees." *Id.*, 213 A.2d at 548. *See also Hemphill v. Quigg*, 355 S.W.2d 57, 63 (Mo. 1962); *Riggle v. Riggle*, 148 N.E.2d 72 (Ohio App. 1957). The finality of judicial decree and the measurable end to litigation have been the focus of most jurisdictional holdings respecting late or irregular notices of appeal. *E. g., United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960); *West v. United States*, D.C.App., 346 A.2d 504 (1975). It is the appearance of finality to litigation which must be the touchstone to whether an appeal may be prosecuted, particularly where the party responding to the appeal or someone else has acted in reliance on the appearance of finality of the judgment sought to be reviewed.

■ As Judge Bastain observed in *Sears v. Sears, supra*, the application of equitable estoppel depends on the particular facts of each case and prior cases have convincingly demonstrated the futility of any effort at pronouncements of sweeping general rules. We hasten to recognize that the cause of

prejudice here visited upon others occurred during appellate court proceedings rather than at a time prior to the trial court ruling. We deem this factor to be lacking in significance because the prejudice to Mr. Neuman, his second spouse, and to any children of that union is obvious. We therefore will not permit any challenge to the validity of the divorce decree or the property distribution. To do otherwise would cast a shadow over the present marital and financial status of Mr. Neuman. *See Insured Savings and Loan Association v. State,* 242 Miss. 547, 135 So.2d 703 (1961).

▮ In reaching this decision, we have considered it to be of prime importance that Robert Neuman reasonably believed that Emily Neuman's appeal was at an end and that he subsequently remarried in reliance thereon. Our holding in this case also points to the urgent necessity for counsel scrupulously to follow the rules of procedure of this court. Service by mail must be accomplished so as to allow delay only within the official channels of the United States mail, not through inter-office or other institutional delays. *Cf. Brest v. Philadelphia Transportation Co.,* 273 F.2d 22, 23 (3d Cir. 1959). We hold that appellant must bear the consequences for the irregularities caused in timely service of the motion to withdraw and the separate letter to the Clerk expressing a desire to proceed on appeal in paid status.

The remaining issue to which we turn concerns the challenge to the custody order based on the trial court's refusal to order an independent psychiatric examination of the children and the parties. In support of her motion for such an examination, appellant relied on Superior Court Civil Rule 35(a). That rule provides in pertinent part:

> When the mental or physical condition . . . of a party . . . is in controversy, the court may order the party to submit to a physical or mental examination . . .. The order may be made only on motion for good cause shown and upon notice to the person to be examined . . ..

▮ In view of our holding that trial court rules which have similar or identical counterparts in federal rules will be construed consistent with the later, *Campbell v. United States,* D.C.App., 295 A.2d 498 (1972), we look to the federal rule precedent. The rules of discovery are limited by Rule 26(b), which imposes a relevancy standard upon any matter that a party seeks to discover.[2] *See Schlagenhauf v. Holder,* 379 U.S. 104, 117, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Guilford National Bank of Greensboro v. Southern R.R. Co.,* 297 F.2d 921, 924 (4th Cir. 1962). However, unlike the other rules of discovery wherein the parties proceed without court sanction until friction develops, Rule 35 requires the court to make an initial determination regarding "good cause" before the parties are allowed to proceed. Since Rule 35 is already limited by Rule 26, the additional requirement of good cause would be meaningless if a party could merely show that the material was relevant. It is, therefore, clear that a greater showing must be made to satisfy the requirements of Rule 35. *Guilford National Bank of Greensboro v. Southern R.R. Co., supra* at 924. As held in *Schlagenhauf v. Holder, supra,* 379 U.S. at 118, 85 S.Ct. at 242:

> [T]he "in controversy" and "good cause" requirements . . . are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

.    .    .    .    .

**2.** Rule 26(b)(1) provides in pertinent part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . ..

Rule 26 is entitled "General Provisions Governing Discovery", which caption applies generally to Chapter V of the Rules.

Furthermore, as the United States Court of Appeals for the Fourth Circuit noted in *Guilford National Bank,* there are strong policy reasons for imposing the good cause requirement in Rule 35 since the moving party is seeking to invade the privacy of another individual. 297 F.2d at 924. *See also Sibbach v. Wilson & Co.,* 312 U.S. 1, 17, 61 S.Ct. 422, 85 L.Ed. 479 (1941) (Frankfurter, J., dissenting). Because of these compelling considerations, it is imperative that a strict standard of good cause be imposed and strictly enforced by the Superior Court as was done here in denying the requested examinations.

■ An examination of pertinent judicial decisions also reveals that Rule 35 was intended to vest broad discretion in the trial judge and that even upon a showing that the condition is in controversy and that good cause exists for the examination, the trial judge may still refuse to issue the order. *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres,* 255 F.2d 149, 153 (1st Cir. 1958); *Bucher v. Krause,* 200 F.2d 576, 584 (7th Cir. 1952), *cert. denied,* 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953); *Hardy v. Riser,* 309 F.Supp. 1234 (N.D.Miss. 1970); *Grimm v. Gargis,* 303 S.W.2d 43, 48 (Mo.1957); *Martin v. Tindell,* 98 So.2d 473, 475 (Fla.1957).

■ The factual background underlying denial of the requested relief here reveals that appellant was seeking to change the previous custody determination. Mrs. Neuman's attorney conceded that Mr. Neuman's mental condition was not in controversy when it was admitted that they were not contesting his fitness as a father. Moreover, in both the written motion and upon argument before the court, appellant's attorney failed to proffer any significant reason for the requested examination. Instead, appellant merely contended that such an examination would be helpful and desir-

able without stating the basis for these conclusions. Indeed, she sought to have the court abdicate its responsibility by expressing a wish to be bound by whatever recommendation would be forthcoming. It is also important to note that at the time the motion was made, two of the children had already been examined by a psychiatrist slightly more than a year before. Therefore, the denial of the motion under Rule 35(a) was not error.

Accordingly, that portion of the judgment of the trial court awarding custody of the children is affirmed. In its other respects, we decline to review that judgment.

*So ordered.*

MACK, Associate Judge, concurring in part and dissenting in part:

The trial court has granted an absolute divorce to a husband, awarded him exclusive ownership of jointly-owned marital property and given him continued custody of the children of the marriage. There is a legal issue as to whether the divorce could be granted on the ground of desertion where the appellant-wife, by virtue of a prior consent order dismissing her suit for a limited divorce on the grounds of cruelty, was barred from entering the family residence during the period in question.[1] There is also an issue as to whether that consent order, sought by the wife after extensive questioning as to her adulterous relationships and drafted without factual findings,[2] was *res judicata* as to the wife's claimed justification for leaving the home. There is, moreover, an issue as to the correctness of the trial court's method of computing the property award and the exercise of its discretion with respect thereto where there was evidence that the wife had made contributions and was not the only party engaging in misconduct.

1. *Cf. Edwards v. Edwards,* D.C.App., 356 A.2d 633 (1976).

2. The trial court in that action advised counsel that he favored a "civilized" consent decree not branding anyone in the interest of the children. After negotiations, a consent order dismissed

the complaint with prejudice, granted the husband's counterclaim for custody of the children with visitation rights vesting in the wife, approved the waiver of the wife's right to alimony, and awarded the husband the *use* and *occupancy* of the jointly-owned residence.

The majority, in adroitly sidestepping these issues, has held that appellant is estopped in this court from challenging the divorce and the property award because of her counsel's irregularity in timely serving on opposing counsel a copy of her request to the court that her motion to proceed on appeal in forma pauperis be withdrawn and a paid appeal substituted. The majority does not question that her appeal is timely (nor does it appear possible to do so as I read the law);[3] rather, says the majority, appellant's irregularity in the service of her request for a change in the status of that appeal misled her husband into thinking that the appeal was abandoned and that he could safely remarry, which he did, three days after her request was granted (and apparently on the same day he received notice thereof).

As I understand the theory of "equitable estoppel," there must not only be either a false representation, concealment of a material fact, or wrongful misleading silence on the part of the person estopped, but the party claiming the estoppel must lack knowledge, *and a means of securing knowledge,* of the true facts. *Parker v. Sager,* 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (1949). *See also United States v. Georgia-Pacific Co.,* 421 F.2d 92, 96 n.4 (9th Cir. 1970); *United States v. Shaw,* 137 F.Supp. 24, 28–29 (D.C.N.D.1956).

This claimed irregularity in service, therefore, seems to be a slender thread upon which to hang a theory foreclosing such important considerations as are involved in this case. Moreover, with all due respect to counsel, I find it hard to believe that appellee, himself a lawyer, having strongly contested the status of his wife to proceed in forma pauperis, could have rea-

sonably concluded, in these bitterly fought proceedings, that his wife was abandoning an appeal altogether.

However, in the interest of balancing equities, and in view of the fact that appellant had sought divorce initially, I have no objection to joining the majority in its efforts not to "cast a shadow" over Mr. Neuman's marital status. I cannot agree that we should refrain from hearing the merits of an issue that might cast a shadow over Mr. Neuman's financial status where there is an issue as to whether appellant had contributed significantly to that status. Estoppel by its very nature must be equitable. I believe the first Mrs. Neuman has been denied inequitably a right of appeal and I respectfully dissent.[4]

---

3. An application for leave to appeal in forma pauperis has frequently been regarded as the equivalent of a notice of appeal. *Gerringer v. United States,* 93 U.S.App.D.C. 403, 407, 213 F.2d 346, 350 (1954); *Randolph v. Randolph,* 91 U.S.App.D.C. 170, 171 n.4, 198 F.2d 956, 957 n.4 (1952); *Des Isles v. Evans,* 225 F.2d 235 (5th Cir. 1955); *accord, Lee v. Habib,* 137 U.S. App.D.C. 403, 407 n.8, 424 F.2d 891, 895 n.8 (1970) (the lodging of a motion to proceed in

forma pauperis tolled the jurisdictional limit for filing a notice of appeal).

4. However an appellate court might react to the reading of a record, it is difficult to question a trial court's assessment as to custody of children and I do not do so here. I do note, however, that the baby child, a little girl, was not examined by the psychiatrist, and that there was considerable testimony that appellant was a fit and proper mother.