ADDIE F. RUCKER *v.* JOHN AMBROSE RUCKER
[No. 53, October Term, 1945.]

*Decided January 8, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Charles F. Obrecht,* with whom was *Hewlett B. Cox,* on the brief, for the appellant.

Court declined to hear argument for the appellee.

*Walter V. Harrison* appeared on brief *amicus curiae.*

MARBURY, C. J., delivered the opinion of the Court.

The issue in this case is the authority of an equity court to pass, on its own motion, an order requiring the complainant in a divorce action to show cause why an enrolled decree should not be striken out for fraud in its obtention. The question is prematurely presented by an appeal from an order refusing complainant's motion to strike out the show cause order, and requiring complainant to answer. This is an interlocutory matter from which no immediate appeal lies here. Although this appeal will have to be dismissed, the question presented, we think, should be discussed.

The grounds upon which the show cause order was passed are contained in the order itself and are there stated by Judge Sherbow as follows:

"On November 23rd, 1943, Addie F. Rucker filed suit for a partial divorce against John Ambrose Rucker in the Circuit Court No. 2 of Baltimore City (Docket 52-B-824/1943), alleging abandonment of the wife by the husband on October 14, 1942. This case was heard before his Honor, Chief Judge Smith, in open Court, and

on March 20, 1944, he signed a decree dismissing the bill of complaint and awarding the custody of the infant children to the complainant, requiring the husband to pay $10.00 per week for the support of the children through the Probation Department of the Supreme Bench.

"On May 31, 1944, the same complainant filed suit against her husband in the Circuit Court of Baltimore City for an absolute divorce based on the same abandonment of the wife by the husband on October 14, 1942. On July 19, 1944, a petition was filed by the complainant stating that two successive subpoenas against the husband were returned '*non est*' and praying for an order of publication. The order of publication was issued, and no answer having been filed, on September 7, 1944, a decree *pro confesso* was taken before the Examiner, and thereafter the papers were referred to the Master, who approved the decree in this case. On December 8, 1944, a dcree was signed granting the complainant, Addie F. Rucker, an absolute divorce from her husband, John Ambrose Rucker, and awarding custody of the children to the said complainant. The divorce decree granted in the Circuit Court is based upon the same abandonment alleged in the case in the Circuit Court No. 2, which was decided adversely to the complainant. This Court is advised that neither the defendant nor his counsel knew of the pendency of the proceedings in the Circuit Court until after the decree had been obtained."

Here we have no question of the right of a defendant to attack an enrolled decree, either by bill of review or by petition. *Bailey v. Bailey*, 181 Md. 385, 30 A. 2d 249; *Saltzgaver v. Saltzgaver*, 182 Md. 624, 35 A. 2d, 810; *Croyle v. Croyle*, 184 Md. 126, 40 A. 2d 374; *Hinden v. Hinden*, 184 Md. 575, 42 A. 2d 120. Neither are here presented matters of defense which should have been raised before decree and which it is claimed the defendant is now estopped to raise. The rights of defendant are not before us. He is in Court on notice by publication after two *non ests* and so far as the record shows,

has no actual knowledge of the proceedings. He has made no application to this Court to strike out the decree of divorce against him. We have no knowledge whether he desires it stricken out or whether he is satisfied to have it remain. The question here is the right of the Court itself, when it is in possession of information tending to show that a fraud has been committed upon it, to take action leading to the determination of that question and to the rectification of its own proceedings.

In the case of *Fisher v. Fisher*, 95 Md. 314, 52 A., 898, 900, this Court discussed the interest of the State in divorce cases, and the difference existing between such cases and ordinary cases due to public morality. In that case, in which, however, there was no question of an enrolled decree, the Court said "to prevent judgments of divorce to be taken where a valid defense exists, Courts on their own motion interfere to prevent such result when facts are brought to their knowledge."

These quoted words and the further discussion in the Fisher case are not limited in their application to the particular facts of that case. They are broad enough to cover all situations where a court has reason to suspect fraud, and acts *sua sponte* to prevent it or to avoid its consequences. The doctrine expressed is as applicable after enrolled decree as before the signing of any decree. Enrollment is a theory based on the obvious necessity of having a time fixed at which litigation must end, and the parties to it be made secure in their rights. But this principle must give way when a hard and fast adherence to it would produce injustice. And injustice does not mean only injustice to a litigant. As the Supreme Court has recently said in the case of *Hazel-Atlas Glass Company v. Hartford-Empire Company*, 322 U. S. 238, 88 L. Ed. 1250: "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with

the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

These words, written in an equity case brought to set aside a fraudulent judgment in a patent matter are especially applicable to similar proceedings in a divorce case in our equity courts.

We do not mean to imply that the Court should strike down every decree obtained by fraud. Justice is the ultimate end of every judicial inquiry, and justice may require that such a decree remain undisturbed. Other interests may have intervened, new conditions may have arisen, and the lapse of time may have justified actions of parties, feeling secure in their rights, which it would be unjust to disturb. What we do mean to say is that the power is present in the instant case, and the Chancellor can exercise it, if further proceedings show the advisability of such action. We do not suggest, in advance of a proper hearing, what he should do. We are discussing now his right to institute an inquiry looking to a possible vacation of the enrolled decree. There is no doubt of such right, and there is no doubt of the duty to exercise such right.

The point under discussion may be thus summarized that the power of an equity court to grant relief against a fraudulent decree cannot and does not depend on how the Court is made aware of the fraud.

The appeal herein will be dismussed.

*Appeal dismissed with costs.*